## STATE v. R. M. ANDREWS.

(Filed 7 April, 1926.)

**1. Automobiles—Auto-vehicles—Taxation — License — Public Service — Regulations—Statutes—Criminal Law.**

It was the intent of the statute, chaper 50, Public Laws of 1925, to regulate the public service of automobiles on the highways of the State between cities and towns through classifications of the Corporation Commission requiring a license therefor, and making a violation thereof indictable as a criminal offense.

**2. Same—Public Service.**

Under the three classifications by the Corporation Commission as to licensing automobiles, under Public Laws of 1925, ch. 50, for the business of transporting passengers, etc., upon the public highways of the State for compensation, to wit: (a) Designated routes between fixed termini; (b) those so engaged without fixed schedules; (c) and those so engaged but not soliciting or receiving patronage along the route or at terminal stations of classes (a) and (b): *Held*, the "service" rendered in contemplation of the statute construed with the classifications made by the Corporation Commission, does not include within the intent and meaning thereof an occasional service rendered at the request of the passenger, and not constituting a regular business or practice of a public service between or at the termini of designated or fixed routes, and an indictment under class "c" will not be upheld.

**3. Same—"Operating"—"Service"—Words and Phrases.**

The statute requiring a license tax under rules fixed by the Corporation Commission for "operating a service" by automobile, etc., over the public highways of the State between cities and towns, contemplates a continuous business.

APPEAL by the State from *Nunn, J.,* at February Term, 1926, of ALAMANCE. No error.

The defendant was charged in an indictment, which is admitted to be regular in form, with a breach of the provisions of chapter 50, Public Laws 1925, in that he carried passengers for hire by automobile without obtaining a license certificate from the Corporation Commission. The jury returned the following special verdict:

"The defendant is duly licensed and engaged in the business of operating a taxicab in the city of Burlington, North Carolina, and holds State, county and municipal licenses to run for hire. On the day specified in the indictment, the defendant was requested by one Jeffreys to transport the said Jeffreys and several other persons for hire from Burlington, over the improved public highway known as Route 10, to Greensboro; that for the sum of six dollars paid to him, the defendant did transport said persons as requested. The said Jeffreys and others

35—191

had been waiting for several hours at the regular bus station for the regular bus operating between Burlington and Greensboro, which was then late and had failed to call for passengers for Greensboro. From time to time the defendant has, upon special request, transported passengers for compensation from Burlington to Greensboro and other points on Route 10. His regular business is confined to Burlington and nearby territory. The defendant does not pretend to maintain a regular schedule or infrequent schedule between said towns but does from time to time and upon special request and for compensation transport travelers from Burlington to Greensboro and other towns upon said highway. The defendant has not applied for or obtained license certificate from the Corporation Commission as provided in chapter 50 of the Public Laws of 1925. Upon the foregoing facts, if the court should be of opinion that the defendant is guilty, then we, the jury, find the defendant guilty, otherwise we find the defendant not guilty. The court upon the foregoing verdict found by the jury, being of the opinion that the defendant, is not guilty, entered a verdict of 'not guilty.' Judgment discharging defendant. From the verdict and judgment the State excepts and gives notice of appeal."

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*I. M. Bailey for the Corporation Commission.*
*John J. Henderson for defendant.*

ADAMS, J. In 1925 the General Assembly enacted a series of statutes designed to regulate, supervise, and control motor vehicles used in the business of carrying persons or property on the improved highways of the State. Public Laws, 1925, ch. 50. It is provided in these statutes that every person or corporation before engaging in such business shall obtain from the Corporation Commission a license certificate (sec. 3), and that the term "motor vehicles" or "motor-propelled vehicles" shall mean "motor vehicles operating a service between different cities or towns." Section 1(d). The defendant's regular business, for the prosecution of which State, county and municipal licenses have been issued, is confined to Burlington and the adjacent region; but without having obtained or applied to the Commission for a license certificate. the defendant for compensation carried passengers in his automobile from Burlington to Greensboro under the circumstances set out in the special verdict. It will be seen, then, that the pivot of the controversy is the question whether the defendant was engaged in "operating a service between different cities or towns" in the contemplation of the statute.

In the exercise of power claimed to have been conferred upon it by the act of 1925 (section 4) the Corporation Commission arranged in the following order all motor vehicle carriers transporting persons or property:

"Class 'A' shall include only motor vehicle passenger carriers operating over specifically designated routes, between fixed termini, upon fixed time schedules.

"Class 'B' shall include only motor-vehicle passenger carriers operating over specifically designated routes, but not upon fixed time schedules.

"Class 'C' shall include only motor-vehicle passenger carriers holding themselves out for private employment only to or from the city or town from which carrier operates and other cities and towns and not soliciting or receiving patronage along the route or at terminal stations of classes 'A' and 'B' carriers."

It is argued for the State that the defendant when indicted was one of the passenger carriers embraced in class "C" and that his business could have been authorized only by the license certificate provided for in the third section. The force of this argument may be determined by ascertaining whether within the meaning of section 1(d) the defendant was actually engaged in "operating a service," or whether, assuming that the Commission was clothed with power to make the classification, he held himself out as engaged in the operation of such service.

It is apparent, we think, that the word "service" as used in the statute signifies more than the mere act of serving, for the idea of infrequent or occasional service rendered upon special request seems to be excluded. The statute contemplates the means of supplying a general demand and in this sense imports service which may be regarded as at least a *quasi*-public business. The very purpose of the recent act is to control the operation on the improved highways of motor vehicles used in the business of transporting persons and property for compensation, and the principle upon which this kind of legislation rests is the fundamental right of protecting the interests and conserving the safety of the public. The phrase is, "operating a service." The word "operating" as used here implies such continuous activity as the nature of the business requires, not simply acts done at long or uncertain intervals; such acts are not enough to establish the business which the Legislature intended to supervise. This, in our opinion, is the reasonable interpretation of the statutes construed in the light of the evil to be prevented and the result to be attained.

In applying these principles we must approve his Honor's conclusion that upon the facts set forth in the special verdict the defendant is not guilty.

No error.